Ms. Albrow. Good morning, Your Honors. May it please the Court. I'm Kimberly Albrow and I'm here on behalf of the appellant Trecika Dunlap, although I will be addressing issues that relate to both appellants. This appeal involves two aspects of the Rule 11 C1C agreements at issue in this case. One part of that appeal issue is whether the District Court accepted the Dunlap's Type C agreements and therefore became bound by the terms of that agreement. And the other aspect is whether the government breached the plea agreement, but I think with the government's recent Rule 28J letter, both parties agree that a breach occurred under the government breached the agreement. Earlier this week the court filed an order asking the council to be prepared to talk about certain issues, so I will start with those issues. The first question was the appropriate remedy in this case. And if this court finds that the District Court accepted the plea agreement, we believe the appropriate remedy is to remand with instructions to impose the year-and-a-day sentence. And that is because the language of Rule 11 C1C itself indicates that a Type C agreement binds the court once it's accepted. So if the court is bound by the terms of the agreement, then the instruction to impose the year-and-a-day sentence would be appropriate. Do you mean to say, when you say accepted, because the court didn't accept it, but you're saying constructively accepted it? Maybe in line with the Sixth Circuit Skidmore case? Certainly the Skidmore case supports that position because specific performance was appropriate in that case. Our argument is that the District Court explicitly accepted the agreement, and if this court disagrees with that, there are certainly indicia that it was constructively accepted. What should I do with the District Court's bond order? Because the District Court is kind of in this weird posture where the District Court has now said, no, this is what happened. So do we have to say the District Court, I mean, what do I do with that order? What should we do with that order? Well, I was very puzzled by that order too, but that was all post-sentencing, post all of these hearings, where the Dunlaps presented their position very clearly. But the District Court says, I didn't accept the agreement. So do I have to say the District Court is wrong about what it did? Well, I'm not sure that something in response to a bond motion post-sentencing can be attributed to the Dunlaps without them having the opportunity to present their position. They presented the same position repeatedly at their sentencing hearings, and the District Court accepted this agreement. I have not rejected this plea agreement. It was on the docket that the plea agreements were accepted. The same argument that was in the motion for bond was also presented at these various sentencing hearings, and the District Court said something differently. Now, whether it was because there was a misunderstanding about what type of agreement it was, whether it was a fundamental misunderstanding about how type C agreements work, I don't know. The District Court said, here's what happened. I accepted the plea only conditionally at the plea hearing, then I reviewed the PSR, and then I rejected it in its entirety at sentencing. And if I said something to the contrary at sentencing, I'm sorry, I misspoke. Are we supposed to say that's just made up? I mean, this is a District Court judge telling us, here's what happened. Well, it's certainly something that you would have to weigh because that is contrary to what was said at the sentencing hearing. I mean, the court at both sentencing hearings said that the waivers were enforceable. At one point when Vera Dunlap was arguing that we believe these plea agreements were accepted, that's what the docket notation says, and made the argument we believe you have to impose the year-in-a-day sentence, the court said, no, I don't understand. I've always been able to, and it's on JA 191 and 192, the court expressed confusion about why would this be a problem. You knew this could be the circumstance where I rejected, specifically said that I would not accept the 11C1C sentence, and then there was a question about whether the government would release the Dunlaps from their appeal waiver, and the court said, well, if the government voluntarily wants to allow the portions of the plea agreement to not be enforced, well, that's fine, but this is what's in the plea contract. So I think the briefs outline specifically many, many instances when that occurred. So I don't know that post-sentencing, once the appeal was filed, when my client Tresika Dunlap filed for bond, that the court can then correct itself for whatever reason or had a better understanding of what went on. I don't know how that can be attributed to Ms. Dunlap, but she never got the chance to respond to the court's order on the bond. So that would be Ms. Dunlap's position. At a minimum, she should be able to have an opportunity to respond to that in front of the district court. So again, our position is the remedy would be to, if this court finds that the district court accepted the agreement, and I do think there are a lot of explicit notations and comments from the court that said the district court accepted the plea agreement, then the instruction to impose the year-in-a-day sentence would be appropriate. And the second issue that the court asked for a response to were the three cases, Skidmore, George, and Soloff. And I think taken together, it accept, reject, or defer a decision explicitly at the change of plea hearing, then this court can find either that the agreement was constructively accepted given everything that occurred at the sentencing hearings afterwards, or if it's ambiguous at all based on the 1990 George case that this court referred counsel to, that any kind of ambiguity would weigh in favor of the defendants on that issue. And I just prepared something in response to the court's order. If the court has any questions on those issues, I'm happy to answer those. I have questions about, you're right, that the government has now conceded that it breached the plea agreement. What's the remedy on that? The remedy is in line with the U.S. Supreme Court of Santabello, where this case would go back to a different district court judge so that the government could adamantly support the negotiated sentence of a year and a day. That's the relief you want? The relief we would like is for the court to remand with instructions to impose the year-and-a-day sentence because we believe that the district court explicitly accepted the plea agreement. That's if the district court accepted the plea, but if the only breach we have in front of us is the government's breach. Just assume hypothetically, disagree that the district court accepted the plea, but obviously agree as the government does that it violated its obligations under the plea agreement. What remedy would you be seeking for that? Well, we would go back and argue for the year-and-a-day sentence. I can't point you to case law that if you find only that the government breached, that you would instruct the court to impose the year-and-a-day sentence. Because if you don't find that the district court already ruled on the plea agreements, I'm not sure that there's any case law that says you can instruct them, yes, you have to accept this 11C1C agreement. I think your clients would also be entitled to withdraw their pleas, but you're not asking for that. Correct. We asked for the lesser specific performance remedy of the year-and-a-day sentence, and that is what the Dunlaps would like, to get the year-and-a-day sentence. And that's really all that I have to comment on, the status of the plea agreements and the breach of the plea agreements, because I again, with the government's breach of the plea agreement, that I think their 28J letter made it clear their position, and we agree with that position. And I think I've answered the court's question in the order, unless there are more questions. You've given what you believe to be your best argument that the judge did breach the agreement? I believe that is, I think that specifically putting, at the time of the change of plea hearing, the court did not reference rejecting, accepting, or deferring a decision on the plea agreement. Then contemporaneously with that, there was a text order entered that said plea agreement accepted as to Tresica and Vera. At the sentencing hearings, counsel raised those issues when it appeared that the district court judge would not impose the year-and-a-day sentence, that didn't want to impose the sentence, brought up the fact that the docket entry said the plea agreement was accepted. That was never changed. The court could have changed the docket entry, they never changed it, and the court continued to say, I have not rejected the agreements, I accepted the agreement, and seemed to be under the impression, just like in the George case and the Skidmore case from the Sixth Circuit, that it could reject one provision of this 11C1C agreement while enforcing all the other provisions of it. Because I think the brief outlines the language pretty well, but in the reply brief on page 5, I bullet pointed the different places where the court, I mean, explicitly said on the record, yes, it has been accepted because it has that condition in it. I have not rejected the plea agreement. Ma'am, although you waived your appellate rights in your plea agreement, you have 14 days from the date of the judgment order to file any notice of appeal, the court was clearly enforcing all other aspects of the plea agreement and consistently said it had accepted the plea agreement. So I do believe that's strong evidence that the plea agreement was accepted, and even by the terms of Rule 11C1C itself, once the court has accepted a Type C agreement, it is bound by the terms. And I think that to excise one part of it, which would be the sentence negotiated, the case is identical to George and to Skidmore, and in Skidmore, the Sixth Circuit held that was a breach by the court and called it very unusual circumstances. These are very unusual circumstances, but that's where we are, and we believe that's what happened and that this case is right in line with George and Skidmore. Thank you. Thank you. Mr. Anderson? Thank you, Your Honor. Howard Anderson. For Vera Dunlap, I would concur with co-counsel here. From Vera's perspective, the first order of request of relief is to remand with instructions to grant the year-and-the-day sentence. If the court finds that that is not permissible, then the second request of relief would be to a different judge to conduct a new sentencing hearing where we could consider, I guess, A, be on the same side as the government this time, and then B, also to look at all the facts and circumstances in the case. In particular now, as I note in the reply brief, because of the amendments to the sentencing guidelines, my client's guideline sentence has now dropped, and so the low end of the guidelines for her is going to be 37 months. I guess this might get into Issue 3, where even if you don't find there was any breach by anybody, that there were issues that would require a sort of reanalysis of 3553, but now my client's guidelines have dropped, and so it might be appropriate even under 3553A to get her back to that year-and-a-day sentence. Again, the different judge to consider the sentence, and then third, even if you reject one and two, Ms. Vera Dunlap should at least be entitled to a resentencing hearing to address the issues that the district court didn't raise, and now we've got the issue of the change guidelines. Can I just ask you, I understand the order in which you've laid out the remedies and your preference, but which violations do they match up with? If what we are remedying is just a remedy, what's the remedy for that? So, per Santabello, you will send it back to a different judge to consider what the sentence will be with the government to say, Judge, we believe the appropriate sentence is a year-and-a-day. And your client also does not want to withdraw her plea. Correct, and Judge, if I can make one, I know I'm over time, but if I can make one other statement. In response to your question, Judge Harris, about the bond order, my client didn't request a bond order. To the extent that you find that that order might have a relevance to Ms. Albro's client, again, my client wasn't part of that and didn't have notice and opportunity to be heard there, and so I would say that that shouldn't factor into how you analyze it as to Vera's case. I really am, beyond the fact that you didn't have an opportunity to respond to the bond order, I am kind of caught up on that because usually when a district court says this is what happened, you know, we sort of take that as authoritative and it puts us in a I think in a somewhat uncomfortable position then to turn around and say, no, that's not true. Well, Judge, I think that the way to sort of square the circle is is that we now have an objective theory of contracts. In the 30s and 40s, it was a subjective, we cared what the parties actually intended. Now, I think, and again, the Supreme Court says that we're going to look to contract principles, and in contract law, we don't care about what you subjectively believed. We care about what the outward manifestations were, what would a reasonable person have understood, and so even if the district court itself subjectively said, I intended to reject it, we just look to what the district court said at the time, and it could be, you know, that that objective theory lets us avoid the issue about what do we do with that, because I think that the objective theory of Good morning. May it please the court. Emily Limehouse on behalf of the United States. As we directly acknowledge in our 28J letter filed with this court last week, we concede that the government breached its obligations under the plea agreement by failing to adequately balance our duty of candor to the court with our equally solemn duty to comply with our obligations under the plea agreement, advocate for acceptance of the 11C1C provision, and request that the court impose a sentence of a year and a day consistent with our plea agreement. We therefore restate our request that this court remand this case for resenancing before a different district judge. Unless the court has any questions about the government's concession with respect to its breach, we'll move to the appellant's arguments about the court's alleged breach of the plea agreement. Should it be sent to a different district? A different district? No, your honor. I don't believe Santabella or any of the cases that discuss government breach, including cases from this circuit, require a different district, just a different district judge. I believe that to the extent this district judge would be tainted by our own breach, that that taint can be cured by just sending it to a different district judge rather than a different district entirely. Why do you think that? I don't see any cases that necessitate an entirely different district, your honor. Isn't this an unusual case? I assume this is atypical. Absolutely, your honor. It is atypical. We don't have any examples to see that, right? I don't think the government's breach here is different than a lot of the government breaches that this court has reviewed. For example, in Edgell, the government in Edgell specifically advocated for a sentence that was three times higher than the stipulation between the parties. Here, while we could argue that the breach was maybe not as severe as the government's breach in Edgell, the remedy was a remand for re-sentencing before a different district judge, not to a different district. And so I don't think that the breach here is sufficiently different from the breach, for example, in Edgell that would necessitate a more severe remedy, so to speak, by sending it to a different district entirely. If I may address the appellant's arguments with respect to the court's alleged breach of the plea agreement. As the appellants argued, in order for this remedy that they request, it must find that the district court accepted the plea agreement. And as this court sort of directs in Soloff, we are to look at the entire record to determine what the indicia from the record shows with respect to the court's intent. If you look at all of the hearings here that are relevant to this court's analysis, from the change of plea hearing in October of 2021 to the first sentencing in March of 2022 and the three year that the court never intended to impose the year-in-a-day sentence, the court never intended to accept the sentencing provision of the plea agreement between the parties. And there are numerous explicit statements, not only in the bond order, of course, but statements made on the record in front of the appellants during the change of plea hearing and the hearings thereafter, expressing their explicit intent to reject the sentencing provision of that 11C1C agreement. And the legal impact of the court's explicit rejection of that 11C1C provision in the plea agreement is a rejection of the plea agreement in full. And while... So your argument is that the district court sort of constructively rejected the plea agreement? We believe that the record shows that at the change of plea hearing in October of 2021 was a deferral of a full acceptance. How does the record show that when the minute order entered directly afterwards says the pleas are accepted? Sure, so the transcript itself, the court reviews the 11C1C provision with the parties and the court expressly asks the appellants if they understand that should she not choose to impose the sentence contemplated in that provision, they will then have the right to withdraw their plea. And then at the end of that change of plea hearing, she says that their pleas are therefore accepted and they are adjudged guilty. It's not like the court puts on the record in open court, I am deferring consideration of your pleas. It's just ambiguous and then you get the minute order happily clearing everything up. The pleas are accepted. From the government's perspective, the minute entry is a docket entry entered at court's staff, not at the court's direction. It's not an order, a judgment of the court. Would you agree with me that in light of the minute order, in light of all the confusing statements that the district court does describe as misspeaking at the sentencing about how you are still bound by your plea agreement even though I'm rejecting the sentence, like this is it is at least ambiguous what happened here, is it not? We believe that the only unambiguous statements from the court are those that they expressly state, the court expressly states on numerous occasions that she rejects that sentencing provision. The sentence, right. But if you're just sitting there in the courtroom and the district court is also saying but you are still bound by your plea agreement, I think that adds a layer of ambiguity. How do you know which one the judge cares more about? Maybe at the end of the day the judge cares more about accepting the agreement, maybe they care more about rejecting the sentence, like how would anybody sitting in that courtroom have any idea what's going on? We believe that those statements really go to the court's confusion about the proper procedures to follow under Rule 11 rather than an acceptance of the plea agreement. I understand but I guess I'm just getting, I would just like your candid take on whether what we had here was very messy for anyone who is sitting in that courtroom and trying to follow along. We acknowledge that the court was very confused about the proper procedures to follow under Rule 11. Rule 11 of course requires an express acceptance, deferral, or rejection. Rule 11c4 requires that if the court were to accept a plea agreement and the stipulated sentencing provision specifically, it must inform the defendants that that agreed-upon disposition will become a part of the judgment in the case. It never did so here, not in the minute entry or otherwise. What it did do was comply with some of the provisions of Rule 11 by notifying the defendants that they had the right to withdraw and that the sentence that she imposes may be more severe than that contemplated in the stipulation. But she seemed to want to think that she could piecemeal accept the plea agreement. And we know from the Ninth Circuit's case in Ingray Morgan and Vazquez Ramirez, from Sealth, the Fifth Circuit in Sealth, and really from some of these court's opinions in Lewis and otherwise that the legal impact of a rejection of a sentencing provision in a plea agreement is a plea agreement in full. And so to the extent that the court misunderstood the proper procedures to follow under Rule 11, those would amount to a violation of Rule 11, which does not necessitate the remedy that the appellants are seeking, which would be binding the court's hand and requiring them to impose a year-and-a-day It sounds like to me you said we'll give them exactly the remedy they just asked for, which was to enforce the agreement a year and a day before a different judge. What is gained if they prevail on the Skidmore or the Fifth Circuit piecemeal? What more remedy? Our concession is that the remedy for a breach of the government's obligations under the plea agreement is a remand for re-sentencing before a different district judge. If this court... Imposition of the sentence? No, Your Honor. I believe that this court's opinion in Edgell and other cases dictates that the appropriate remedy for a government breach is just a remand for re-sentencing before a different district judge that does not require them to impose the sentence in the stipulation. Rather, just giving them the benefit of their bargain, which is the parties presenting a united front before a neutral district judge, where the government will advocate as it is required to do for acceptance... This is a Rule 11C type agreement here where it has specific type dimensions to it. It is a negotiated situation in which there are charges and there's all kind of interest involved when a defendant says, okay, I will plea to this. When the government says, okay, I won't charge you with these other things here. You go before the judge and then that's part of the agreement. But the judge picks out the sentence part, which is where the Fifth Circuit was going. I mean, where does that end? I mean, they're not... The judge is certainly interested in the fairness of the agreement, but to the extent that the government has engaged in this type of situation and the plea is then accepted, how do you accept something that I didn't agree to? Particularly from the defendant's perspective. Sixth Circuit went directly to it. You've got Sixth Circuit, you've got Fifth Circuit law. We've not spoken to it, but I don't know of any other court that's gone the other way. That's correct. In fact, this court in Soloff, while finding Soloff distinguishable from Skidmore, declined to go as far as the court in Skidmore by allowing the court and the parties to look to the full indicia of what the record indicates. And the government, from the government's perspective, if you look at the full record here, it's clear that the district court never... We didn't need to go there in the Soloff case. It wasn't necessary to do that in that case. That was the reason maybe the court didn't do it. It wasn't that they rejected it. They just didn't need to. That's correct, and we don't believe there's the need here either because of the court's expressed statements that were made on the record in the appellant's presence on numerous occasions during numerous hearings. I will note that nobody left that October 2021 change of plea hearing believing that the plea agreements had been accepted. If you look at the March 2022 Vera Dunlap first sentencing, the first thing that the government says when they're discussing how to litigate some objections to the pre-sentence report, the government says it's the government's understanding that should the court accept the stipulated sentence, then they will withdraw their objections to the pre-sentence report. And, of course, Ms. Vera Dunlap's counsel didn't jump up and down at that point and say, wait a second, this has already been accepted. It was clearly the party's understanding that the court had not accepted that sentencing provision and had not accepted the plea agreement. But Skidmore goes further, doesn't it? If we adopt Skidmore, it really cuts against what went on here, doesn't it? Well, we think Skidmore's distinguishable because of the record we have here, but, of course, we also think it's unnecessary and too far. Skidmore doesn't discuss the explicit provisions of Rule 11, which would require under 11C4 a court accepting a plea agreement to notify the defendant that the agreed-upon disposition will become a part of the judgment. And I think Skidmore, in failing to discuss the provisions of Rule 11 and what's required for acceptance, sort of— The docket said you accepted it. Looks like to me it's at least ambiguous. We believe the minute entry, of course, is inconsistent with the court statements on the record. But, again, it's not an order. It's not a judgment. It's a docket entry made by court staff that's inconsistent with the court's own statements made on numerous occasions during numerous hearings to the defendants directly. And the minute entry itself also doesn't comply with Rule 11C4, which is what's necessary to accept a plea agreement by notifying the defendants that the agreed-upon disposition will become a part of the judgment. There was never an acceptance as required under Rule 11C4. Even that minute entry doesn't qualify under the requirements of 11C4. Here, we believe the record unambiguously indicates— What if the court simply fails to indicate? One way or another. So in a vacuum, if there's no indication one way or another. I believe this court's arguments in Soloff are instructive about what to do when there's a complete ambiguity. As I said, we didn't reach the Skidmore. Sure. But I think the arguments— If the court fails to accept it, and it's all there in front of us, Skidmore points to the direction that you consider that in acceptance if you're going to allow it to proceed to the guilty plea stage. We believe the legal impact of a rejection of a sentencing provision is a rejection of the plea agreement in full. In Skidmore, the court accepted the plea agreement and refused to make the defendants forfeit property that was forfeitable under the plea agreement. And we don't think that it's necessary for the court to go there here because we think it's unambiguous what the court's intent was, even if that intent did not comply with the provisions of Rule 11. The step in your argument that I keep stumbling over is that we can assume that when the district court basically said, I want to reject the sentence and accept the rest of the plea. So how do we know that the rejection of the sentence was a constructive rejection of the plea and not vice versa? That what we should prioritize is the part where the judge kept saying, I'm accepting the rest of the plea, everything but the sentence. Why isn't that a constructive acceptance of the sentence? Well, I think the cases, in Ray Morgan and Vasquez Ramirez and self and others, direct us to the legal implication of a rejection of a sentencing provision. So we should, I think like the logic of that would be like, look, that's the most important part of the plea agreement. So we should assume that whatever the district court thought about that, it meant to make everything sync up with that. And when the district court keeps saying, I really want to hold you to your appellate waiver, all these other provisions of the plea agreement didn't care as much about that. So we can assume that the district court wasn't constructively accepting the sentence. Well, I think the year-in-a-day provision is what's most important to the parties, evidenced by what their requested remedy is, of course. The defendant's request that they receive a year-in-a-day is the biggest benefit of their bargain, so to speak. It seems weird that we put ourselves in the mind of the district court and try to guess which part mattered more to the district court. Sure, and I think the arguments in Soloff are instructive of when there is just an ambiguity that you can't tell what the appropriate remedy is. Yes, and what the appropriate remedy would be. If we're looking at ambiguity in sort of a vacuum, without the government breach issue that we have, requesting a remand for resentencing before a different district judge, but if you look at ambiguity in a vacuum, I think the appropriate remedy would be to allow the district court to be more clear in what its actual intent was, rather than to bind the court's hands and require them to impose a sentence of a year-in-a-day, which is what they never intended to do, and it wasn't a guarantee that the defendants received under the plea agreement, so it wasn't the benefit that they bargained for. And so for those reasons, we think if we're looking at just the ambiguity of the court's intent, the remedy shouldn't be that their specific performance on behalf of the government, on behalf of the court, because you'd have to find that the court accepted the plea agreement in order to find that that remedy was appropriate. And if it's ambiguous, what the court's intent was, then of course there's no acceptance of the plea agreement to warrant a breach on behalf of the court. If I may just briefly respond to the appellant's arguments about some of the expressed statements of the court, and I think we've discussed this at length already, but each one of those, there are two explicit statements that I accept of plea agreement on page 170 and 194 of the joint appendix. Both of those statements are within the same sentence of an express statement rejecting the sentencing provision of those plea agreements, and so we don't believe that her misunderstanding about the appropriate procedures to follow under Rule 11 necessitate the specific performance that they are requesting that this court impose. Therefore, we request a remand for re-sentencing before a different district judge as they've reiterated today. They don't attempt to withdraw their guilty pleas. They wouldn't like to withdraw their guilty pleas. So we believe the appropriate remedy here is a remand for re-sentencing before a different district judge. If there are no further questions on the government's breach, I'd like to briefly address the arguments with respect to the sentencing and the court's consideration of the 3553A factors. Ms. Vera Dunlap is arguing that the court didn't consider her age or her poor health when imposing the sentence. There are, of course, five sentencing hearings in this case, and this court reiterated on numerous occasions its strong familiarity with the facts and circumstances of the case and with the history and characteristics of Ms. Vera Dunlap. During that first sentencing hearing in March of 2022, when advocating for the court's acceptance of the 11C1C provision, the counsel for Ms. Vera Dunlap specifically referenced her age and her poor health in discussing why a sentence over a year and a day would be difficult for her to serve, and the court said she would, of course, consider that in fashioning the appropriate sentence, something that's sufficient but not greater than necessary. And when addressing her sentencing arguments during the following two sentencing hearings, the court talked about, acknowledged Ms. Vera Dunlap's poor health and age when she referenced her strong familiarity with the defendant's circumstances. As to Mr. Seeker Dunlap, she, of course, is challenging the substantive and procedural reasonableness of the court's sentence, specifically with respect to the aberrant behavior departure motion. She did specifically address their arguments there. There are, of course, three factors that the court has to find in order to find that that is an appropriate reason for a departure. The court said maybe you have the third one. She specifically rejected their arguments with respect to Ms. Tresika Dunlap's aberrant behavior departure motion. And then, of course, Ms. Tresika Dunlap's arguments with respect to her 3553A factors and mitigating factors. The central thesis of Ms. Tresika Dunlap's arguments under 3553A related to her daughter's medical and health issues. And if you look at these transcripts from the three different sentencing, two sentencing hearings, excuse me, that Ms. Tresika Dunlap had and the change of plea hearings before, the court expresses that it is extremely sympathetic to Ms. Tresika Dunlap's daughter's medical issues and the need to care for her daughter. And she reiterates that sympathy during the final sentencing hearing in October of 2022. She, in specifically granting their request for a variance and varying 10 months below the bottom of the guideline range, references Ms. Tresika Dunlap's situation. As long as we're talking about Tresika's sentencing, what do I do? Was this just a district court misspeaking again? What do I do with the places where the district court says things like, I get all of that, but that's not what we're here about. I'm here to look at the offense and figure out the sentence. I mean, there are a couple of times where the government says words, I'm sorry, where the district court says words to that effect, and they are sort of troubling on the page. Yes, Your Honor. The district judge, I believe, specifically says, I'm not here to judge you, so to speak. There's a couple of times. That's not the issue. Yes. And those statements were in direct response to Ms. Tresika Dunlap making pleas to the court to please judge me for who I am. I believe the court's intent was, I can't just judge you for who you are as a person, and my imposing this sentence is not judging you as a person, but it's looking at everything. And, of course, this court was very focused on the severity of the conduct that Ms. Tresika Dunlap and Ms. Vera Dunlap were found guilty of and the deterrent factor that her sentence would provide in fashioning the sentence that she did. And so those statements, when read in the entirety of the transcripts, really indicate that I'm not judging you as a person by imposing a sentence more severe than you're requesting. I'm judging everything that I have to consider. And so, Your Honor, I believe that the record reflects that the court did adequately consider all of the mitigation and 3553A factors in fashioning a sentence sufficient but not greater than necessary. I see my time's up. Ms. Limehouse, may I ask a question? Again, I'm old, so you'll have to excuse me, because I practiced law for a long time, but that was a while ago. But why in the world do you have a plea accepted before the court looks at the circumstances, PSR and all those things like that? I mean, when I was practicing law, you would never do that. If I have an agreement for a certain amount of time, I'm not playing to anything until the judge says I accept. So what you're saying is that even in the natural order, you normally do that, you have a plea agreement with a set sentence. But then you have another, but the docket entry says the plea agreement is accepted. And I don't care who typed it or whatever, that's the court's official record. It says that. And then you go into another sentencing consideration, and then the court talks about, well, you did this part, and you can still appeal even though you did. And then the government says, well, we're going to still hold you to a waiver. Oh, as a matter of fact, I've got to talk to my bosses and see whether or not, in fact, we're going to hold you to that too. Oh, you're talking about just everything's caving in on you. You don't get the sentence, and then, yeah, we're going to keep you. Everything that's bad about it, that's still good. I mean, how do you have anything in terms of the due process? It looked like the government would say, Your Honor, why don't we just wait and see whether you're good with this. And then the court asked you, not you, but the government, why do you think I should give this? Well, the answer is because we have an agreement right here in writing. That's the answer. Instead, you go and turn the whole thing around. Your Honor, two points I'd like to address, specifically with reviewing the guidelines before agreeing to accept a plea agreement with a stipulated sentence. The Supreme Court in Hughes and this court, in some opinions, Ninos, for example, after Hughes, acknowledges that even in an 11C1C stipulated sentence context, the court is required to consider the sentencing guidelines and the 3553A factors in determining whether to accept or reject a plea agreement. And Hughes recognizes that that naturally leads to a deferral. Rule 11, of course, does allow for acceptance, rejection, or deferral of a plea agreement, but the normal course of business is what we believe happened here, although it is very ambiguous what the court understood the impact of its decisions to be. And so the deferral at the change of plea, you accept the plea, which exists separately from the plea agreement itself, and then you have the pre-sentence report that's prepared for the parties and for the court to get a better understanding of the conduct and the defendant and the guidelines that apply before deciding whether to accept a plea agreement. And so we think that normal course and what the Supreme Court dictates a court must consider in determining whether to accept or reject an 11C1C agreement is further evidence that the court didn't intend to accept this plea agreement during that October 2021 change of plea hearing, and in fact expressly rejected that sentencing provision, which resulted in a rejection of that plea agreement in full. Thank you, Your Honor. Thank you. Ms. Albraugh? Thank you, Your Honor. What I would point out initially is that the government spent a lot of time giving you its interpretation of what the district court meant. Obviously, the Dunlaps have given you a different interpretation of what the district court meant, and I think that it's clear that all this ambiguity makes it very unclear what happened below, and that should weigh in favor of the Dunlaps. And why is that? I mean, I can really see arguments either way. Like when the government drafts a plea agreement and it's unclear, we say we'll resolve the ambiguity in favor of the defendant. But for us to sort of order the one-year, one-day remedy, doesn't it have to be clear that the district court accepted the plea agreement? We don't know whether the district court accepted it or not, so we can just order this remedy. Well, I think it is clear that the district court accepted it. I know, but you said if it's ambiguous, so I just want to push you on that. Well, for instance, when the government was arguing about Ms. Dunlap and the court telling her, I'm not here to judge your character, even though that's one of the 3553A factors the government represented, well, the district court really intended this. I mean, it's the fact that a lot of different aspects of the sentencing have to be explained. So overall, it's ambiguous. I mean, I think that— Just assume for a minute I think the record is ambiguous. I'm just trying to figure out if a lack of clarity as to whether or not the district court accepted the plea agreement can be remedied by us ordering the district court to impose the one-year and one-day sentence. We would have to be writing an order that says something like, we can't tell whether or not you accepted the agreement, so therefore we're going to act like you did and impose this sentence. I'm just trying to figure out how that works. Well, I think the case law on 11C1C agreements is unique in that the district court is bound by the agreement. If the district court accepts it. In my hypothesis, we're saying we can't tell whether or not the district court accepted it. And that's where I think the case law, Skidmore comes in, Soloff. I mean, even Soloff, and the government said this in their briefs, and they said it today at oral argument, that Rule 11 requires explicit acceptance or rejection. I don't think that's true. And Soloff on page 244 says, lack of express acceptance doesn't mean that the court didn't accept it. And I think that goes into the ambiguity. You have to weigh the different things that were said, and given the nature of the 11C1C, and the reason that when the government breaches, it goes back to a different judge. It's not because the court doesn't trust the judge. I read some of the circuit cases on this because Santabella doesn't explicitly say why it's important to go back to a different judge. But a lot of the reasons is to make sure there's no appearance of impropriety with the district court judge that originally sentenced the person. As a remedy, if we thought it was ambiguous, whether or not the district court accepted the plea, but we're all clear that the government breached the plea agreement, so this has to go back anyway. Would it be possible to send the whole thing, including the plea agreement, back to a new judge? Just, new judge, look at this plea agreement, accept it, reject it. Do it right. And then, if you reject it, we're going to be arguing vociferously anyway for the sentence that is in the plea agreement. Do you know what I mean? Can we just start this thing over? Well, I think that's why we vehemently opposed the remand at the time the government wanted to remand, because there is another layer to this. If the district court accepted the agreement, we believe the instruction needs to be for the year-and-a-day sentence. If this court only decides the issue of government breach, which clearly is the easiest path since the parties agree that the government breached, then it would go back down, and the new district court judge would have to consider the plea agreement, and there would not be this issue of it's already been accepted, you have no choice because you're bound by the acceptance that the district court already made. I think that's the way that you get back to the reconsideration of the whole plea agreement. But what I would say to that is, if that's the position we're in, then I think that the Dunlaps would then have the opportunity to withdraw their pleas, because you would be back in the position of starting at review of the plea agreement from the beginning. They ask for what's considered the lesser remedy in case law-specific performance of the year-and-a-day, because the Dunlaps do adamantly believe that the district court accepted this agreement. We could send the whole thing back to a district court judge with instructions that first that district court judge review the plea agreement that was in front of this district court judge. The Dunlaps would have the right to withdraw their plea, and then if it gets as far as the district court saying, I'm rejecting that sentence, I guess the government has to argue for acceptance of the sentence before this district court. Correct. And the reason we wanted the first issue decided is because even, you talked about the rejection of bond by the district court judge. We had a bond hearing when I asked for bond from this court, and Ms. Dunlap was given bond. And even at that hearing, the government argued that, no, it's very likely they'll get the same sentence. There shouldn't be any change of the bond conditions because it's very likely that even if this goes before a different judge, they'll still get a sentence higher than what's in the plea agreement, which is why we wanted the first issue resolved as well. But I see I'm out of time, and I appreciate the time of the court today. Thank you. Ms. Banderson? Very briefly. I think I would disagree a little bit with Ms. Albrow and the premise of Judge Harris. I teach contracts, and so I tell my student, when you've got a contract, look at the communications in order. Where's the offer? Where's the acceptance? And once you get to something that's an acceptance, it doesn't matter what comes after that. And so I think as we go along, if it's ambiguous at the change of plea, that's fine. But then after that, I think we get an objective manifestation of acceptance in that minute order that's never been rejected. And so it doesn't matter if we're looking at an objective theory of contracts. It doesn't matter what the district court says later. We certainly don't allow a defendant to say, yes, I said yes and I accepted it there at the change of plea, but I didn't really mean it. We're looking at outward manifestations of assent. And once that order came down, even though the judge didn't say, yes, I accept it during the change of plea, it comes down under the authority of the judge afterwards, that's an objective acceptance. And 11C1C, once it's accepted, the rule does not allow a judge to back out of a contract any more than the defendant can back out of the contract. And so that would be a slight point of variance, I think. You'd be saying there's nothing ambiguous about this. If we go linearly and we treat it just like any other contract, and so the ambiguity, if one arises, comes if we're looking at these post-acceptance statements, but I think that they are legally irrelevant if you have an objective manifestation of assent. Thank you. Okay. First, I note that you were caught upon it, and I do it on behalf of the court, Fourth Circuit. Thank you so much. We're allowing lawyers like yourselves to represent clients in these cases, and we appreciate very much your doing so. At Ms. Lamb's house, of course, we note your able representation of the United States. We'll come down to Greek Council and proceed to our final case for the term.
judges: Roger L. Gregory, James Andrew Wynn, Pamela A. Harris